**MINNESOTA MINING AND MANUFAC-
TURING COMPANY, a corporation,
Plaintiff and Appellant,**

v.

**Kent CONRAD, Tax Commissioner of
the State of North Dakota,
Defendant and Appellee.**

Civ. No. 11391.

Supreme Court of North Dakota.

Dec. 29, 1987.

Pearce & Durick, Bismarck, for plaintiff
and appellant; argued by William P.
Pearce.

M. Kathryn Heitkamp (argued), State
Tax Dept., Bismarck, for defendant and
appellee. Appearance by Carla K. Smith.

Harold L. Anderson, Bismarck, and E.
Andre Bonami, Chicago, Ill., for amicus
curiae Amoco Corp.

GIERKE, Justice.

Minnesota Mining and Manufacturing
Company [3M] appeals from a district court
judgment upholding the State Tax Commis-
sioner's assessment of $27,372 in additional
corporation income tax, penalty and inter-
est against 3M for tax years 1979 through
1981, and denial of 3M's request for a
refund of $76,967 for those same years.
We reverse and remand.

After an audit of 3M's 1979, 1980, and
1981 tax returns, the Commissioner issued
a Notice of Determination and Assessment
of additional corporation income tax
against the company. The Commissioner
determined that 3M had overpaid its 1979
and 1980 taxes, but had underpaid its 1981
taxes. The underpayment resulted from
3M's use of a method for calculating its
federal income tax deduction under state
law which differed from the method it used
in the previous years. 3M protested the
assessment for 1981 and requested a re-
fund for the 1979 and 1980 tax years, as-
serting that the method it used to calculate
its federal income tax deduction for 1981
was the correct method and should have
been used for its 1979 and 1980 returns.
The parties stipulated to the facts and an
administrative decision was issued uphold-
ing the Commissioner's determination.
The district court affirmed the administra-
tive decision and this appeal followed.

The issue in this case is whether the
Commissioner's method for computing
3M's federal income tax deduction under
§ 57–38–01.3(1)(c), N.D.C.C., is proper. It
presents a question of law, fully reviewable
by this court. *International Minerals &
Chemical Corp. v. Heitkamp,* 417 N.W.2d
791, 794 (N.D.1987). In order to under-
stand the basis for the parties' positions,
some background information is necessary.

3M transacts business both within and
without North Dakota. As a result, 3M
must apportion its business income to this
state under the three-factor formula set
forth in the Uniform Division of Income for
Tax Purposes Act [UDITPA], Chapter 57–
38.1, N.D.C.C. Under this formula, in or-
der to determine the portion of business
income attributable to North Dakota, 3M's
income is multiplied by a fraction repre-
senting the arithmetic average of the ratios
of sales, payroll, and property values with-

in the state to those of the corporation as a whole. *See* §§ 57–38.1–09, 57–38.1–10, 57–38.1–13 and 57–38.1–15, N.D.C.C.

An interrelated part of UDITPA formula apportionment is the "unitary business" concept. *See Container Corp. of America v. Franchise Tax Bd.*, 463 U.S. 159, 165, 103 S.Ct. 2933, 2940, 77 L.Ed.2d 545 (1983). A preferred alternative to separate accounting, a method which is easily subject to manipulation through misrepresentation of the geographic allocation of income, the unitary business principle ignores geographic boundaries and measures taxable income of the corporation by including the income of its out-of-state branches, subsidiaries and affiliates. *See* R. Tannenwald, "The Pros and Cons of Worldwide Unitary Taxation," *Tax Notes*, November 12, 1984, pp. 649, 650; Note, *State Worldwide Unitary Taxation: The Foreign Parent Case*, 23 Colum.J.Transnat'l L. 445, 446 (1985). The term "unitary business group," when applied to a corporation which has subsidiaries or other associated corporations in other jurisdictions, "is used to describe a group of functionally integrated corporate units which are so interrelated and interdependent that it becomes relatively impossible for one State to determine the net income generated by a particular corporation's activities within the State and therefore allocable to that State for purposes of taxation." *Caterpillar Tractor Co. v. Lenckos*, 84 Ill.2d 102, 49 Ill.Dec. 329, 337, 417 N.E.2d 1343, 1351 (1981), *appeal dismissed sub nom. Chicago Bridge & Iron Company v. Caterpillar Tractor Company*, 463 U.S. 1220, 103 S.Ct. 3562, 77 L.Ed.2d 1402 (1983). The unitary business method thus takes the overall income of an integrated enterprise and apportions it among the states in which the enterprise carries on its business on the theory that activities in each of the states where an enterprise operates contribute to its overall profit. *See* D. Simmons, *Worldwide Unitary Taxation: Retain and Rationalize, or Block at the Water's Edge?*, 21 Stan.J. Int'l L. 157, 162 (1985).

A particular type of formula apportionment which is of relatively recent vintage is worldwide unitary taxation. As the name suggests, the worldwide unitary combination method removes all of the geographic constraints on the identification of a unitary business. *See* R. Tannenwald, *supra*, at p. 652. Under this approach, the state does not limit the unitary business' apportionable tax base to domestic or United States-sourced income, but includes income from the unitary business' activities in foreign countries. *See* Note, *supra*, 23 Colum.J.Transnat'l L. at 458. Although controversial, worldwide unitary combination is nevertheless viewed as an acceptable method to reasonably approximate the income generated by the unitary business in the taxing state. *See Container Corp. of America, supra.*[1]

Under this method, the income of the corporation and all of its foreign subsidiaries and other associated corporations throughout the world is combined to determine the worldwide income of the unitary business group. Intercorporate dividends or other transfers of funds among the members of the unitary group are eliminated so that income will not be counted twice in determining the combined worldwide income. *See* R. Tannenwald, *supra*, at p. 650. Thus, under UDITPA's three-factor formula, apportionment is accomplished by determining the ratio of property, payroll and sales in the state to the unitary business group's worldwide property, payroll and sales. The resulting ratio is then multiplied by the total worldwide income of the unitary group to reflect the income that is taxable by the state.

---

**1.** In *Container Corp. of America* the United States Supreme Court upheld the constitutionality of California's use of worldwide combination, at least insofar as it was applied to a domestic parent corporation and its foreign affiliates and subsidiaries. The constitutionality of total worldwide combination, where the unitary business of a foreign-based corporation includes any of its affiliates, including its foreign parent and foreign affiliates conducting no trade or business in the United States, was not addressed by the Court. *See Container Corp. of America, supra*, 463 U.S. at 189 n. 26, 103 S.Ct. at 2952 n. 26; R. Tannenwald, *supra*, at pp. 653, 656.

In this case, the Commissioner required 3M to file its corporation income tax returns on a combined worldwide unitary basis. Although UDITPA "does not specify worldwide unitary apportionment is to be used, that method has been employed in North Dakota since 1973 under an administrative interpretation by the Tax Commissioner." Report of the North Dakota Legislative Council, Fiftieth Legislative Assembly, at p. 184 (1987).[2] 3M has not challenged the Commissioner's authority to require that it file its returns in this case on a combined worldwide unitary basis.

Under North Dakota law, federal taxable income, plus or minus certain statutory adjustments, is the simplified starting point for computing the state income tax. *See International Minerals & Chemical Corp., supra,* 417 N.W.2d at 794; §§ 57–38–01(8) and 57–38–01.1, N.D.C.C. Section 57–38–01.3(1)(c), N.D.C.C., allows a corporation a deduction for its federal income taxes:

> "*57–38–01.3. Adjustments to taxable income for corporations.*
>
> "1. The taxable income of a corporation as computed pursuant to the provisions of the Internal Revenue Code of 1954, as amended, shall be:
>
>     *     *     *     *     *     *
>
> "c. Reduced by the amount of federal income taxes, paid or accrued as the case may be during the applicable tax year to the extent that such taxes were paid or accrued upon income which becomes a part of the North Dakota taxable income...."

The Commissioner has computed 3M's federal income tax deduction by apportioning on a worldwide basis the federal income tax paid by 3M on its United States-sourced income only. This is done by multiplying the federal income tax paid by 3M by the apportionment factors for North Dakota computed on a worldwide basis. In other words, the Commissioner requires worldwide apportionment of federal income tax paid after foreign tax credits are taken by 3M for foreign taxes paid on its foreign income.[3] In effect, the formula used by the Commissioner may be theoretically expressed as follows:

$$\frac{\text{N.D. Taxable Income}}{\text{Worldwide Income of Unitary Group}} \times \text{Federal Income Tax Paid} = \text{N.D. Federal Income Tax Deduction}$$

3M asserts that the Commissioner's method for determining the federal income tax deduction seriously dilutes or distorts its intended effect when the Commissioner employs worldwide unitary combination. 3M contends that once the Commissioner has modified the scope of the statutory basis for federal taxable income under § 57–38–01(8), N.D.C.C., a corresponding adjustment must be made in the determination of the federal income tax deduction. 3M asserts that determining the federal income tax deduction by applying the North Dakota worldwide apportionment factors to the federal income tax paid on domestic income alone results in eliminating a substantial portion of the intended deduction, because the income base (combined worldwide income of the entire unitary group) differs fundamentally from the base proposed for the deduction (actual federal income tax paid by the parent corporation after foreign tax credits).

3M relies upon *Anderson, Clayton & Co. v. DeWitt,* 20 Ariz.App. 474, 513 P.2d 1357 (1973), in which the Court of Appeals of Arizona addressed a similar issue. In *Anderson, Clayton & Co.* the issue concerned the proper method of calculating a similar state federal income tax deduction when the corporate taxpayer was allowed a federal foreign tax credit. The taxpayer had income from Arizona as well as other

---

2. In 1987 the Legislature enacted Chapter 57–38.4, N.D.C.C., which allows a corporation required to file a worldwide unitary combined report to elect to apportion its income using the "water's edge" method. *See* 1987 N.D.Sess.Laws Ch. 702. In general, the "water's edge" method "limit[s] the reach of unitary income taxation to the borders of the United States." D. Simmons, *supra,* 21 Stan.J. Int'l L. at 158.

3. The federal foreign tax credit mechanism is prescribed in I.R.C. §§ 901 through 908. *See generally* B. Bittker and J. Eustice, *Federal Income Taxation of Corporations and Shareholders* ¶ 17.11 (4th ed. 1979).

states and foreign countries and was accordingly allowed a federal tax credit to offset foreign taxes paid on its foreign-sourced income. The taxpayer asserted that the State Tax Commission's method of computing the federal income tax deduction, which is theoretically identical to the method used by the Commissioner in this case, under-allocated the share of the federal income tax liability apportionable to Arizona. The Tax Commission contended that the taxpayer's foreign tax credits were irrelevant to the computation of the taxpayer's share of federal taxes attributable to the state.

The court held that the Tax Commission's method fell "woefully short" of achieving the statutory objective:

> "It does not allow the taxpayer to take the full deduction contemplated by the statute, that is, a deduction from its gross Arizona income of that portion of the federal income tax paid which is allocable to its income taxable by Arizona.

> "We do not think that it can be realistically contended that the net amount of federal income tax actually paid by Anderson Clayton should be allocated between the *fully taxed* (federally speaking) Arizona income and the balance of its worldwide income, including the *essentially untaxed* (again, federally speaking) foreign source income. We say 'essentially untaxed' because in a very real sense this foreign source income has had a portion, if not all, of the federal income tax burden removed from it through application of the foreign tax credit...." [Emphasis in original.]

*Anderson, Clayton & Co., supra,* 20 Ariz. App. at 476–477, 513 P.2d at 1359–1360. The court thus struck down the Tax Commission's formula that multiplied a ratio which included federally untaxed foreign source income in the denominator by a figure from which foreign taxes had already been excluded. We find the rationale of the court in *Anderson, Clayton & Co.* persuasive in this case.

Although we have recognized that tax deductions are purely a matter of legislative grace, *see International Minerals* *and Chemical Corporation, supra,* 417 N.W.2d at 794, that does not imply that a tax deduction, once given, need not be applied in a fair and rational manner. *Cf. National Life Ins. Co. v. United States,* 277 U.S. 508, 520, 48 S.Ct. 591, 593, 72 L.Ed. 968 (1928) ["The suggestion that as Congress may or may not grant deductions from gross income at pleasure, it can deny to one and give to another is specious, but unsound."]; *Golden Rule Church Association,* 41 T.C. 719, 729 (1964) ["Although tax benefits such as exemption may be matters of legislative grace ... nevertheless, a denial of such benefits granted to others of essentially the same class may well rise to the level of an unconstitutional discrimination."] Internal consistency is the "first, and again obvious, component of fairness in an apportionment formula ...," *Container Corp. of America, supra,* 463 U.S. at 169, 103 S.Ct. at 2942, and has also been recognized as a necessary component in the application of tax statutes. *See Dow Chemical Co. v. Commissioner of Revenue,* 378 Mass. 254, 391 N.E.2d 253, 266 (1979) [requiring consistency in application of statutes defining income base and deductions]. The Commissioner's method, which indiscriminately mixes incompatible concepts, clearly creates what we believe to be an unintended internal inconsistency in the application of § 57–38–01.3(1)(c), N.D.C.C.

This discrepancy is best illustrated by a simplified example posited by 3M. Assuming that a corporate taxpayer, a United States parent company, had North Dakota taxable income of $2,000 before the federal tax deduction, federal taxable income from domestic sources of $1,000,000, and had unitary foreign subsidiaries which generated $1,000,000 of foreign source income, the combined worldwide taxable income of the unitary group would be $2,000,000. Assuming that no foreign dividends were paid to the parent corporation, that no foreign tax credit was taken, and that the federal income tax rate was 46 percent, the corporation's federal income tax would be $460,-000 (46% × $1,000,000). The worldwide apportionment factor for North Dakota being 0.001 ($2,000/$2,000,000), the Commissioner's method would allow a North Dakota

federal income tax deduction of $460 (0.001 × $460,000). Assuming further that a second corporate taxpayer had the same amount of income generated by its various divisions, except that all of the income was generated in the United States, the federal taxable income would be $2,000,000, rather than $1,000,000 as in the previous example. The second corporation's federal income tax would be $920,000 (46% × $2,000,000) and the apportionment factor for North Dakota would remain 0.001 ($2,000/$2,000,-000). However, the federal income tax deduction would double under the Commissioner's method to $920 (0.001 × $920,000).

It is therefore apparent that under the Commissioner's method the extent of the federal income tax deduction is dependent solely on whether the source of the unitary business' income is foreign or domestic. We do not believe that this was intended by the Legislature when it enacted the federal income tax deduction statute.

The statutory provisions regarding the base for determining North Dakota taxable income, *i.e.*, federal taxable income of the taxpayer under § 57–38–01(8), N.D.C.C., as well as the federal income tax deduction under § 57–38–01.3(1)(c), N.D.C.C., were in existence long before the Commissioner began employing the worldwide unitary combination method. Section 57–38–01.1, N.D. C.C., provides:

> "*57–38–01.1. Declaration of legislative intent.* It is the intent of the legislative assembly to simplify the state income tax laws and to demonstrate that federal legislation is not necessary to deal with certain interstate tax problems, by adopting the federal definition of taxable income as the starting point for the computation of state income tax by all taxpayers and providing the necessary adjustments thereto to substantially preserve and maintain existing exemptions and deductions...."

The Commissioner, having in effect expanded the income base from federal taxable income of the taxpayer to the combined worldwide income of the unitary group, cannot simply ignore the effect this interpretation would have on other parts of the statutory scheme. The statutes obviously premise the determination of taxable income and the deduction on the same base, *i.e.*, federal taxable income and federal income tax paid on that federal taxable income. If the income base is enlarged through an "administrative interpretation," the corresponding deduction base must be changed in order to "substantially preserve and maintain" the existing federal income tax deduction. We conclude that the Commissioner's method of determining 3M's federal income tax deduction, which mixes the use of worldwide combined income with federal income taxes paid only on federal taxable income, is improper.

3M and amicus curiae have proposed several alternative methods of computing the federal income tax deduction which they assert would place the income base and the deduction on a more consistent basis. One method proposed by 3M is to use its federal income tax liability prior to any exclusions for its foreign tax credits as the apportionable base for the deduction. The federal income tax deduction would then be computed by multiplying this figure by the North Dakota apportionment factors on a worldwide basis. This method is similar to one approved by the court in *Anderson, Clayton & Co., supra*, and may be expressed by the following formula:

$$\frac{\text{N.D. Taxable Income}}{\text{Worldwide Income of Unitary Group}} \times \frac{\text{Federal Income Tax Paid Plus Foreign Tax Credits}}{} = \frac{\text{N.D. Federal Income Tax Deduction}}{}$$

The Commissioner asserts that this method does nothing more than allow a deduction for foreign taxes paid by 3M, in violation of §§ 57–38–01.3(1)(c) and 57–38–01.-3(1)(d), N.D.C.C.[4] We disagree. Initially,

---

**4.** The deduction for foreign income taxes which had been provided by § 57–38–01.3(1)(c), N.D. C.C., was eliminated by the Legislature in 1975. *See* 1975 N.D.Sess.Laws Ch. 535 § 1. Section 57–38–01.3(1)(d), N.D.C.C., provides:

> "*57–38–01.3. Adjustments to taxable income for corporations.*

> "1. The taxable income of a corporation as computed pursuant to the provisions of the Internal Revenue Code of 1954, as amended, shall be:
>
> \* \* \* \* \* \*
>
> "d. Increased by the amount of any income taxes, including income taxes of foreign

3M did not elect to deduct any foreign taxes during the years in question under I.R.C. § 164(a)(3), but chose instead to avail itself of the foreign tax credit mechanism under I.R.C. §§ 901 *et seq.* Moreover, we agree with the *Anderson, Clayton & Co.* court's response to the contention that this method violated a similar Arizona statutory provision which prohibited the deduction of income taxes imposed by the authority of the government of any foreign country:

> "While upon a superficial analysis this might appear to be true, and in fact has some appeal as a simplistic resolution of a difficult question, a more thorough study reveals the fallacy of this contention. Viewed closely, it is apparent that Anderson Clayton is not attempting to take a deduction for income taxes paid to a foreign government. The problem being attacked is that of determining the portion of the federal income tax actually paid which is allocable to Arizona taxed income. If the relationship between the federal tax paid and total income has been in some way affected by the presence of unrelated foreign source income with its resulting foreign tax credit, then the consideration of that influence in determining the portion of the federal tax actually paid which is allocable to Arizona income does not constitute the taking of a deduction for income taxes paid to a foreign government in violation of [the statute]...."

*Anderson, Clayton & Co., supra,* 20 Ariz. App. at 478, 513 P.2d at 1361.

Amicus curiae has proposed a method in which the formula's denominator includes only United States-sourced income, but excludes foreign-sourced income. Under this formula, North Dakota taxable income is divided by total United States-sourced taxable income. This ratio is then multiplied by the federal income tax paid in order to arrive at the federal income tax deduction. This formula may be expressed as follows:

| *N.D. Taxable Income* | | Federal Income | | N.D. Federal |
|---|---|---|---|---|
| United States–Sourced Taxable Income | × | Tax Paid | = | Income Tax Deduction |

countries, or franchise or privilege taxes measured by income, to the extent that such taxes

The court in *Anderson, Clayton & Co., supra,* 20 Ariz.App. at 477–478, 513 P.2d at 1360–1361, also viewed this method to be more consistent with achieving the result required under the Arizona statutory scheme than the Tax Commission's method: "[T]his approach would result in restoring balance to the Commission's formula in that the foreign source income would be removed entirely from the formula, thereby offsetting the deduction of the tax on that income which has been previously removed by the foreign tax credit."

The Commissioner also objects to this method asserting that it requires a modification of the apportionment formula under UDITPA, Chapter 57–38.1, N.D.C.C., which is not allowed by statute. However, § 57–38.1–02, N.D.C.C., provides in part that "[a]ny taxpayer having income from business activity which is taxable both within and without this state ... shall allocate and apportion his *net income* as provided in this chapter." [Emphasis added]. The Commissioner has cited us to no statutory authority which requires that the UDITPA apportionment formula be applied to the federal income tax adjustment to income under § 57–38–01.3(1)(c), N.D.C.C.

We recognize that determining the taxable income of multinational corporations is hardly an exact science. The methods proposed by 3M and amicus curiae which we have discussed attempt to rectify the distortion of the federal tax deduction created by the inclusion of foreign-sourced income in the apportionment formula. There may be other methods which would also provide a solution to the problem. Because possible acceptable solutions vary, we decline to direct the Commissioner to use a particular arithmetic method for computing 3M's federal income tax deduction. However, we do hold that the method employed by the Commissioner in this case is unacceptable under our statutory scheme.

The judgment of the district court is reversed and the case is remanded to the Commissioner for a redetermination of the

were deducted to determine federal taxable income."

federal income tax deduction allowable to 3M for the years in question.

ERICKSTAD, C.J., and MESCHKE and LEVINE, JJ., concur.

VANDE WALLE, J., concurs in the result.