BIANCO, J.T.C.
This opinion constitutes the Tax Court’s decision concerning the motion filed by defendant, Director, Division of Taxation (hereinafter “the Director”), to dismiss for untimely filing and the cross-motion for summary judgment filed by plaintiff, General Motors Acceptance Corporation (hereinafter “GMAC”). For reasons set forth in this opinion, the Director’s motion is granted and GMAC’s motion is denied.
*431 For the purposes of this opinion, the court accepts the following facts as true.[1] GMAC is a Delaware corporation with its principal office in Detroit, Michigan. It is a 100% owned subsidiary of General Motors (hereinafter “GM”).
GMAC was included in the 2000 federal consolidated income tax return filed by its parent, GM. Within that return, GMAC reported a deemed dividend in the amount of $548,614,220 (hereinafter the “Dividend”) from a German corporation, Adam Opel AG, plus the required foreign dividend gross-up in the amount of $440,048,630.[2] The Dividend resulted from a transaction with Adam Opel AG that is not at issue in the present motions, but will be described to provide context. Under an agreement between GMAC and Adam Opel AG, dated November 20, 2000 (hereinafter the “Adam Opel AG transaction”), GMAC transferred 100% of the stock in Opel Bank GMbH, a fully owned subsidiary of GMAC, to Adam Opel AG, a 100% owned subsidiary of GM, for a purchase price of approximately $1.35 billion. The effect of the transaction was to transfer complete ownership of Opel Bank GMbH from GMAC to Adam Opel AG. Before and after the transaction GM owned both GMAC and Adam Opel AG outright.
GMAC filed its 2000 Corporation Business Tax (hereinafter “CBT”) return on or about September 14, 2001. In the return, GMAC excluded from its entire net income 50% of the Dividend, an amount equal to $274,309,755. GMAC argued that it erroneously took a 50% exclusion, rather than a 100% exclusion, because *432 it believed that the Dividend was attributable to a less than 80% owned subsidiary.[3]
After GMAC filed its 2000 CBT return, the Commissioner of Internal Revenue (hereinafter the “Commissioner”) initiated an audit of GM’s 1998,1999 and 2000 federal consolidated income tax returns. In a Notice of Income Tax Examination Changes, dated August 15, 2005, the Commissioner assessed income adjustments to GMAC’s 2000 tax year in the amount of $439,760,822 (hereinafter the “federal audit”).
On or about November 7, 2005, GMAC timely submitted to the Director its report of the federal audit (hereinafter “Revenue Agent Report”). GMAC disclosed the results of the federal audit of GMAC’s 2000 tax year as a $1,593,457 increase in entire net income. GMAC also disclosed that it was correcting the dividend exclusion in its 2000 CBT return to reflect a 100% exclusion of the Dividend because the Dividend was attributable to a 100% owned subsidiary. With the Revenue Agent Report, GMAC remitted to the Director a check for $856,269, representing additional CBT of $598,758, interest of $257,511 and a withholding of $992,280, attributable to the corrected dividend deduction.
The Director issued a Notice of Assessment to GMAC dated January 26, 2006, in the amount of $1,452,479.04. GMAC timely protested and requested a hearing. The Director issued a Final Determination, dated July 20, 2007, disallowing GMAC withholding of $992,280 in CBT. GMAC timely appealed the Final Determination to this court and the pending motions ensued. The court need only address the Director’s motion to dismiss.

N.J.S.A. 54:49-16(b)

Offsets are provided for in N.J.S.A. 54:49-16(b), which provides in pertinent part:
*433 Where no questions of fact or law are involved and it appears from the audit of any taxpayer that a State tax has been erroneously or illegally collected from such taxpayer, or has been paid by such taxpayer under a mistake of fact or law, the director may, mthin the time in which a deficiency assessment of that tax may be made, credit the erroneous overpayment of tax to the account of the taxpayer to offset the amount of a deficiency assessment; provided, however, that a credit shall only be applied to offset a liability for a period covered by the assessment period and shall only be granted with respect to a deficiency assessment made by the director under the same State tax as the erroneous overpayment.
[Ibid, (emphasis added).]
GMAC argued that it has satisfied all the elements of N.J.S.A. 54:49-16(b), which accordingly to GMAC are: (1) the “tax has been erroneously or illegally collected from such taxpayer, or has been paid by such taxpayer under a mistake of fact or law;”[4] (2) the offset is claimed “within the time in which a deficiency assessment of that tax may be made;” (3) the Director “credit the erroneous overpayment of tax to the account of the taxpayer to offset the amount of a deficiency assessment;” (4) the “credit shall only be applied to offset a liability for a period covered by the assessment period;” and (5) the offset “shall only be granted with respect to a deficiency assessment made by the director under the same State tax as the erroneous overpayment.” Ibid. As applied to the facts, GMAC argued that: (1) the Director over-collected CBT for 2000; (2) GMAC’s offset claim on November 7, 2005, more than two months before the Director assessed additional 2000 CBT, was within the time in which the Director could make a deficiency assessment of that tax; (3) the overpayment can be used against that assessment; (4) the assessment liability and the offset each arose in 2000; and finally (5) the tax overpaid and assessed was the CBT.
The court finds that GMAC has failed to satisfy all the elements of N.J.S.A. 54:49-16(b) and therefore may not claim an offset.
Under N.J.S.A. 54:49-16(b), the Director may only offset a deficiency assessment with an erroneous overpayment “within the time in which a deficiency assessment of that tax may be made.” Ibid, (emphasis added). The time in which the Director may *434 examine corporate business tax returns and make assessments thereof is governed by N.J.S.A. 54:10A-19.1(d), which references the State Uniform Tax Procedure Law (hereinafter “SUTPL”), N.J.S.A. 54:49-1 to -20. The applicable provision within the SUTPL is N.J.S.A. 54:49-6, which provides in pertinent part:
b. No assessment of additional tax shall be made after the expiration of more than four years from the date of the filing of a return; provided, that in the case of a false or fraudulent return with intent to evade tax, or failure to file a return, the tax may be assessed at any time. If a shorter time for the assessment of additional tax is fixed by the law imposing the tax, the shorter time shall govern.
[Ibid, (emphasis added).]
However, if the taxpayer undergoes a federal audit that results in an adjustment, the time limitation imposed by N.J.S.A. 54:49-6 is extended by N.J.S.A. 54:10A-13, which provides:
If the amount of the taxable income for any year of any taxpayer as returned to the United States Treasury Department is changed or corrected by the Commissioner of Internal Revenue ... such taxpayer shall report such change or corrected taxable income ... within 90 days after the final determination of such change or correction ... and shall concede the accuracy of such determination or state wherein it is erroneous. Any taxpayer filing an amended return with such department shall also file within 90 days thereafter an amended report with the director. The periods of limitations to make deficiency assessments under R.S. 54:49-6 and to file claims for refund under R.S. 54:49-14 shall commence to run for additional four year periods from the date that taxable income is finally changed or corrected by the Commissioner of Internal Revenue; provided, that the additional periods of limitation shall only be applicable to the increase or decrease in tax attributable to the adjustments in such changed or corrected taxable income. [Ibid.]
GMAC filed its 2000 CBT return on September 14, 2001 and its taxable income was finally changed or corrected by the IRS on August 15, 2005. Pursuant to N.J.S.A. 54:10A-13 the Director then had until August 15, 2009 to make a deficiency assessment on GMAC’s 2000 CBT return.[5] After GMAC remitted less than the amount stated in the federal audit, the Director made a deficiency assessment on January 26, 2006 reflecting the difference between the increase in tax attributable to the federal audit and GMAC’s remittance. Neither the federal audit nor the Director’s January 26, 2006 deficiency assessment mentioned an offset for GMAC.
*435 The Director argued that the plain language of N.J.S.A. 54:10A-13 precludes GMAC from claiming the offset because its claim is not attributable to the federal audit. Instead, the offset claim arose out of an internal review by GMAC. GMAC in turn argued that N.J.S.A. 54:10A-13 is inapplicable to present matter because it only applies to the statutes cited therein, i.e. refunds under N.J.S.A. 54:49-14 and deficiency assessments under N.J.S.A. 54:49-6, and not offsets under N.J.S.A. 54:49-16(b).
The court finds that GMAC’s argument is inconsistent with the plain meaning of N.J.S.A. 54:10A-13 and canons of statutory construction. The first step in any statutory analysis is to examine the statute’s plain language for its intended meaning. National Waste Recycling, Inc. v. Middlesex County Improvement Auth., 150 N.J. 209, 223, 695 A.2d 1381 (1997). “Where the statutory language is ‘clear and unambiguous,’ courts will implement the statute as written without resort to judicial interpretation, rules of construction, or extrinsic matters.” Bergen Commer. Bank v. Sisler, 157 N.J. 188, 202, 723 A.2d 944 (1999). When interpreting a statute, courts should avoid a construction that would render “ ‘any word in the statute to be inoperative, superfluous or meaningless, or to mean something other than its ordinary meaning.’ ” Id. at 204, 723 A.2d 944 (quoting In re Estate of Post, 282 N.J. Super. 59, 72, 659 A.2d 500 (App.Div.1995)). “The court should strive for an interpretation that gives effect to all of the statutory provisions and does not render any language inoperative, superfluous, void or insignificant.” G.S. v. Department of Human Sens., 157 N.J. 161,172, 723 A.2d 612 (1999).
It is clear from the plain language of N.J.S.A. 54:10A-13 that the extended period of limitations applies to only deficiency assessments under N.J.S.A. 54:49-6 and claims for refund under N.J.S.A. 54:49-14 that are both attributable to a change or correction to taxable income by the Commissioner. N.J.S.A. 54:10A-13. GMAC’s interpretation would not only expand the extended period of limitations to a statute not listed in N.J.S.A. 54:10A-13, but it would also extend the period of limitations without the caveat that it only applies to “the increase or decrease in taxable attributable to the adjustments in such changed or
*436 corrected, taxable income.” N.J.S.A. 54:10A-13 (emphasis added). Such an interpretation would render one clause of the statute superfluous. To give effect to the entire statute, the periods of limitation, along with the restriction, must be applied to offset claims.
GMAC’s argument ignores the fact that under N.J.S.A. 54:49-16 the Director may only credit the taxpayer with an offset “within the time in which a deficiency assessment of that tax may be made.” Here the Director’s authority to make a deficiency assessment is pursuant to N.J.S.A 54-.10A-13, which only applies to increases or decreases in taxable income attributable to changes or corrections made by the Commissioner. Consequently, GMAC finds itself in a Catch-22. If N.J.SA 54:10A-13 does not apply to offsets, as GMAC advocates, then the Director has no authority to credit GMAC with an offset because its January 26, 2006 deficiency assessment was beyond the four-year limitation found in N.J.SA. 54:49-6. On the other hand, if N.J.S.A. 54:10A-13 does apply, then GMAC’s offset claim is invalid because it is not attributable to the federal audit.
Moreover, GMAC is not entitled to an offset because its does not appear from any audit of GMAC that a state tax has been erroneously or illegally collected from GMAC. Under N.J.S.A. 54:49-16(b), the Director may credit a taxpayer an offset only when “it appears from the audit of any taxpayer that a State tax has been erroneously or illegally collected from such taxpayer, or has been paid by such taxpayer under a mistake of fact or law____” Ibid, (emphasis added). Pursuant to the Director’s regulations, it is the Director, rather than the taxpayer, that must initiate the audit. N.J.A.C. 18:2-2:10(b).[6] Here GMAC claimed *437 the offset in its Revenue Agent Report. However, the federal audit, the only audit of GMAC’s 2000 CBT return, found only an increase in GMAC’s taxable income. Consequently, GMAC is not entitled to an offset because it does not appear from any audit that GMAC erroneously or illegally overpaid its 2000 CBT.
In its briefs and at oral argument, GMAC argues that N.J.A.C. 54:49-16 should be read as the codification of an offset principle articulated in Lems v. Reynolds, 284 U.S. 281, 52 S.Ct. 145, 76 L.Ed. 293 (1932)[7], and that the statute bars the Director from collecting additional taxes unless there is a showing of an actual tax deficiency. GMAC’s reading of N.J.S.A. 54:49-16 as a codification of Lewis is misguided. While similar, N.J.S.A 54:49-16 and Lewis, supra, stand for slightly different propositions. The former is a limited statutory grant of authority given to the *438 Director. The latter, however, is a judicially crafted limitation on federal refund claims. 284 U.S. at 283, 52 S.Ct. at 146, 76 L.Ed. at 295. The United States Supreme Court found that implicit in the rule that a taxpayer is not entitled to a refund unless he has overpaid his tax is the Commissioner’s authority to reaudit a return, even if the federal statute of limitations for making an additional assessment has ran. Lewis therefore concerns a rule of federal taxation that is broader than the statutory grant of power in N.J.S.A. 54:49-16. Compare Lewis, supra, 284 U.S. at 283, 52 S.Ct. at 146, 76 L.Ed. at 295 (“Although the statute of limitations may have barred the assessment and collection of any additional sum, it does not obliterate the right of the United States to retain payments already received when they do not exceed the amount which might have been properly assessed and demanded.”) (emphasis added), with N.J.S.A. 54:49-16 (“[T]he director may, within the time in which a deficiency assessment of that tax may be made, credit the erroneous overpayment of tax to the account of the taxpayer to offset the amount of a deficiency assessment ... ”) (emphasis added).

Doctrine of Recoupment

GMAC also argued that it is entitled to an offset under the doctrine of recoupment as announced in Bull v. United States, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421 (1935) and adopted by the Supreme Court of New Jersey in Beneficial Fin. Co. v. Swaggerty, 86 N.J. 602, 609, 432 A.2d 512 (1981). In support of this position, GMAC argued that it is entitled to recoupment because the offset and the Director’s assessment arose from the same state tax, GMAC is the only taxpayer involved, and the equities favor GMAC because the Director has already collected too much tax.
As first articulated by the United States Supreme Court in Bull, “recoupment is in the nature of a defense arising out of some feature of the transaction upon which the plaintiffs action is grounded. Such a defense is never barred by the statute of limitations so long as the main action itself is timely.” Bull, supra, 295 U.S. at 262, 55 S.Ct. at 700, 79 L.Ed. at 1428. In summarizing its own precedent applying recoupment in tax litigation, the Court wrote:
*439 [Recoupment] has never been thought to allow one transaction to be offset against another, but only to permit a transaction which is made the subject of suit by a plaintiff to be examined in all it aspects, and judgment to be rendered that does justice in view of the one transaction as a whole. The application of this general principle to concrete cases in both of the cited decisions [Bull supra, and Stone v. White, 301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1265 (1937) J, is instructive as to the limited scope given to recoupment in tax litigation. In both cases a single transaction constituted the taxable event claimed upon and the one considered in recoupment. In both, the single transaction or taxable event had been subjected to two taxes on inconsistent legal theories, and what was mistakenly paid was recouped against what was correctly due.
[Rothensies v. Electric Storage Battery Co., 329 U.S. 296, 299-300, 67 S.Ct. 271, 272, 91 L.Ed. 296, 299-300 (1946).]
To apply the doctrine otherwise, the Court has warned, “would seriously undermine the statute of limitations in tax matters” and would create a situation where “[e]very assessment of deficiency and each claim for refund would invite a search of the taxpayer’s entire tax history for items to recoup.” Id. at 302-03, 55 S.Ct. 695. Accordingly, the Court has decided “that a claim of equitable recoupment will lie only where the Government has taxed a single transaction, item, or taxable event under two inconsistent theories.” United States v. Dalm, 494 U.S. 596, 605-06 n. 5, 110 S.Ct. 1361, 1367 n. 5,108 L.Ed.2d 548, 560 n. 5 (1990).
In adopting the federal doctrine of recoupment, the Supreme Court of New Jersey wrote:
Inherent, in the concept of recoupment is the notion of fundamental fairness. The underlying policy is “to permit a transaction which is made the subject of suit by a plaintiff to be examined in all its aspects, and judgment to be rendered that does justice in view of the one transaction as a whole.” New Jersey similarly defines recoupment as “the reduction of a claim because of an offsetting claim arising out of exactly the same transaction....”
Recoupment is distinguishable from setoff in that the latter involves an affirmative recovery on a claim that may be independent of the transaction upon which the plaintiffs claim is based. While recoupment may be utilized only to reduce or extinguish the plaintiffs recovery, setoff may be awarded for any amount to which the defendant is entitled.
[Beneficial, supra, 86 N.J. at 609, 432 A.2d 512 (citations omitted),)
Pursuant to the aforementioned, the Tax Court described recoupment as:
[T]ho “right of the defendant, in the same action, to cut down ... plaintiffs demand____” In general legal practice, recoupment is in the nature of a counterclaim raised as a defense by a defendant against whom a plaintiff has made some *440 type of money demand____Nevertheless, any claim of recoupment must arise out of the identical transaction that provided plaintiff with a cause of action, and no affirmative relief may be granted independent of plaintiffs claim. As an equitable concept, judges invented the doctrine of equitable recoupment in order to avoid an unusually harsh or egregious result from a strict application of a statute of limitations.
[Superior Air Products International, Inc. v. Director, 9 N.J.Tax 463, 470-71 (Tax) (citations omitted), aff'd per curiam, 10 N.J.Tax 238 (App.Div.1988).] [8]
From the foregoing, the Superior Air Products International, Inc. court gleaned three elements essential to any claim for recoupment: (1) a single transaction[8]
[9]; (2) an identity of interest among the parties; and (3) a need to balance the equities. Id. at 473. With respect to the first element — a single transaction — the Superior Air Products International, Inc. court viewed it narrowly to mean one involving only a particular item on a tax return or a single event or transaction during the tax period in question. Id. at 474 (citation and quotation omitted). The Superior Air Products International, Inc. court noted that a broader reading of the “single transaction” element would contravene the United States Supreme Court’s warning in Rothensies that “[e]very assessment of deficiency would invite a search of the taxpayer’s entire tax history for items to recoup.” Ibid, (citations and quotations omitted).
*441 In Superior Air Products, International, Inc. Superior Air Products International, Inc. (hereinafter “SAPI”), a wholly-owned subsidiary of Superior Air Products Company, took deductions in its 1981 and 1982 CBT returns for deemed distributions to its parent. Id. at 466. The parent received those distributions in the same years and included them in its entire net income for the tax years ending September 30, 1980 and September 30, 1981. Id. at 466-67. An audit by the Director in 1979 and 1980 resulted in no adjustment to either SAPI or its parent. Ibid. A second audit in 1984, however, revealed that the parent erroneously included in the dividends in its entire net income, but due to the running of the statute of limitations, the parent was precluded from claiming a refund. Ibid. Approximately two years later the Director audited SAPI’s business tax returns for the tax years 1980 and 1981 and upon completion thereof, disallowed the “deemed distributions” which SAPI had deducted from its income base on its CBT returns. Id. at 468.
SAPI filed suit and asked the Tax Court to apply the doctrine of recoupment. Id. at 468. In rejecting SAPI’s claim for recoupment, the Superior Air Products International, Inc. court held that SAPI’s inclusion of earnings in its income base for the tax years in question and its parent’s inclusion of the dividends, albeit erroneously, in its income base were distinct occurrences, rather than one single tax event, and therefore recoupment was inappropriate under the circumstances. Id. at 475-76.
Similar to the parent corporation in Superior Air Products, International, Inc., the taxable event for GMAC was its decision to include in its 2000 income base, albeit erroneously for the purposes of this letter opinion, 50% of the Dividend issued to it by Adam Opel AG. GMAC’s claim for an offset and, more importantly, the Director’s deficiency assessment arose out of GMAC’s submission of the Revenue Agent Report and its remittance of only $856,269 on November 7, 2005. Contrary to GMAC’s contention that its claim for an offset and the Director’s assessment arose out of one single event, distinct occurrences, rather than one single event, gave rise to each. While the Director’s deficiency assessment is based on GMAC’s withholding of $992,280 from the *442 deficiency assessment imposed by the federal audit, GMAC’s claim for an offset is based on its initial, but yet erroneous, 2000 CBT return and is therefore not a defense to any feature of the tax imposed by the federal audit.
Moreover, to find that GMAC’s claim for an offset and the Director’s assessment arose from a single transaction would contrive the narrow view of transaction adopted by the Superior Air Products International, Inc. court and would seriously undermine the statute of limitations in tax matters. Such a finding would create a situation where every Revenue Agent Report assessing a deficiency “would invite a search of the taxpayer’s entire tax history for items to recoup.” Rothensies, supra, 329 U.S. at 302, 67 S.Ct.271.
Since the court finds that there were two taxable events, it need not address the other two elements of recoupment. However, the court notes that with respect to the third element — balancing the equities — GMAC’s reliance on the unpublished opinion of Tuckahoe Construction Co. v. Taxation Division Director, Docket No. CB 046B-83 (Tax Oct. 10, 1984) is unpersuasive. See R. 1:36-3.

Conclusion

GMAC is only entitled to an offset during “the time in which a deficiency assessment of that tax may be made.” N.J.S.A. 54:49-16(b). GMAC’s is not entitled to an offset because either the Director’s ability to make a deficiency assessment is barred by N.J.S.A. 54:49-6(b) or GMAC’s claim does not relate to a change or correction by the Commissioner, as required by N.J.S.A. 54:10A-13. Nor is GMAC entitled to an offset under the doctrine of recoupment because there were two taxable events. Accordingly, the Director’s motion is granted. GMAC’s cross-motion for summary judgment need not be addressed and is therefore denied.

 By informal agreement between the parties and the court the arguments in the parties’ briefs and at oral argument held on October 9, 2009 was limited to whether GMAC may claim an offset. As a result, the parties and the court accepted GMAC’s Statement of Material Undisputed Facts as true. The Director has, however, reserved the right to challenge GMAC’s characterization of the underlying transaction between GMAC and Adam Opel AG should the Director be unsuccessful here.

 For a discussion of federal taxation of dividends from a foreign corporation see generally International Minerals and Chem. Corp. v. Heitkamp, 417 N.W.2d 791, 794 (N.D.1987) (explaining the federal foreign dividend gross-up rules).

 Under NJ.S.A. 54:10A-4(k)(5), a dividend is 50% excluded from New Jersey entire net income if it is attributable to a less than 80% owned subsidiary and is 100% excluded from New Jersey entire net income if it is attributable to an 80% or greater owned subsidiary. The merits of GMAC’s argument are not at issue for the purposes of this opinion and the court notes that the Director has reserved the right to challenge GMAC’s argument should it lose here.

 GMAC recanting of this element omits the following statutory language: "it appears from the audit of any taxpayer that a State...."

 The Director's authority to make an assessment under N.J.S.A. 54:49-14(a) expired on September 14, 2005.

 GMAC argues that the Director’s regulations may not exceed the scope of or contradict the statute and therefore it urges this court to analysis only the terms of N.J.S.A. 54:49-16(b). While it is true that "an administrative agency may not interpret a statute to give it greater effect than its statutory language permits,” court also accord "substantial deference to the interpretation of the agency charged with enforcing an act.” New Jersey Tpk. Auth. v. AFSCME, Council 73, 150 N.J. 331, 351-52, 696 A.2d 585 (1997) (internal citations omitted). "An *437 agency's interpretation prevails unless plainly unreasonable." Id. at 351, 696 A.2d 585 (internal citation omitted). New Jersey "caselaw establishes, however, that if an agency's statutory interpretation is contrary to the statutory language, or if the agency's interpretation undermines the Legislative intent, no deference is required." Ibid, (internal citations omitted). Accordingly, the Director's regulation is accorded substantial deference. This court is satisfied that the Director's regulation is consistent with the statutory language and the Legislative intent of N.J.S.A. 54:49-16(b) which vests in the Director the authority to grant, rather than giving taxpayers the private right to claim in their returns, an offset.

 In Lewis, administrators of an estate claimed deductions for attorney's fees and other taxes paid. 284 U.S. at 282, 52 S.Ct. at 145, 76 L.Ed. at 293. The Commissioner disallowed all the deductions except the one for attorney's fees and assessed a deficiency within the limitation period. Ibid. The administrators paid the sum and requested a refund pursuant to section 284 of the Revenue Act of 1926. Ibid. In response, the Commissioner rejected the administrators' request for a refund because, although the statute of limitations for an assessment had run, the Commissioner claimed that the deduction for the attorney's fees had been improperly allowed and therefore the estate was liable for an amount that was greater than what it had previously paid. Ibid. The administrators challenged the Commissioner's actions on the basis that the Commissioner lacked the authority to redetermine and reassess tax after the relevant federal statute of limitations had run. Id. at 283, 52 S.Ct. at 146, 76 L.Ed. at 295. In ruling for the Commissioner, the United States Supreme Court held that "[wjhile the (federal] statutes authorizing refunds do not specifically empower the Commissioner to reaudit a return whenever repayment is claimed, authority therefore is necessarily implied. An overpayment must appear before refund is authorized.” Ibid.

 "In the area of state taxation, the normal process of protesting a tax deficiency assessment requires the taxpayer to shoulder the burden of proof and demonstrate why the tax payment should not be made. Thus, as in the present case, plaintiff must present a claim that is in the nature of a defense to the imposition of the tax. Although the role of plaintiff and defendant in tax litigation is reversed, this does not limit the legal or equitable claims that may be pleaded on behalf of the plaintiffs in opposing tax assessments.” Superior Air Products International, Inc., supra, 9 N.J.Tax at 471 n. 6. (citing Bull, supra, 295 U.S. at 262, 55 S.Ct. at 700, 79 L.Ed. at 1428.).

 The court notes in dicta that the federal doctrine of recoupment also requires that the single transaction or taxable event be subjected to two taxes on inconsistent legal theories. See Dalm, supra, 494 U.S. at 605-06 n. 5, 110 S.Ct. 1361. Based on the Superior Air Products International, Inc. court's summation of federal law and its determination that there were two taxable events in that case, it is unclear whether New Jersey requires that the same taxable event be subjected to two taxes on inconsistent legal theories.