1997 ND 110

**HAMICH, INC. and Debbon, Inc., Petitioners, Appellees and Cross–Appellants,**

v.

**STATE of North Dakota, By and Through its Tax Commissioner, Richard S. CLAYBURGH, Respondent, Appellant and Cross–Appellee.**

Civil No. 960330.

Supreme Court of North Dakota.

June 3, 1997.

Jay H. Fiedler (argued), of Pearson, Christensen, Larivee, Clapp, Fiedler & Fischer, Grand Forks, for petitioners, appellees and cross-appellants.

Donnita Ann Wald (argued), Special Assistant Attorney General, Tax Department, Bismarck, for respondent, appellant and cross-appellee.

NEUMANN, Justice.

[¶ 1] The State, by and through the Tax Commissioner, appeals from a judgment holding taxpayers Hamich, Inc., and Debbon, Inc., were denied equal protection under the state and federal constitutions by the Commissioner's requirement that they file their state corporate income tax returns for tax years 1986 through 1991 using the single entity method rather than the combined report method they preferred. Hamich and Debbon cross-appeal from an order denying their request for attorney fees. We conclude the Commissioner had the statutory authority to impose the single entity filing requirement for those tax years, the requirement is not contrary to public policy, and the requirement did not violate the taxpayers' equal protection rights. We reverse the judgment and affirm the order denying attorney fees.

I

[¶ 2] Debbon, Hamich, and Harma are North Dakota corporations with principal offices in Fargo. Hamich and Harma are wholly-owned subsidiaries of Debbon. The three corporations operate McDonald's Restaurant franchises in Fargo and West Fargo, but conduct no out-of-state business activity. Each restaurant location has a separate franchise granted by McDonald's Corporation and must separately account for its operations. Franchise fees paid to McDonald's Corporation are calculated separately based on each franchise's business activity.

[¶ 3] For federal income tax purposes, Debbon filed consolidated federal corporate income tax returns for tax years 1986 through 1991. Debbon reported the net income of the consolidated group under the methods permitted for parent and subsidiary-controlled corporations under federal law. See 26 U.S.C.A. § 1501. Because Harma incurred losses during those tax years, the losses were used to offset the combined federal taxable income of the consolidated group.

[¶ 4] For those same tax years, Hamich and Debbon filed their North Dakota corporate income tax returns using the combined report method. Under this method, the tax-able income or loss of Debbon and the two corporate subsidiaries were again combined to form the starting point for calculating their North Dakota corporate income tax returns, permitting Hamich and Debbon to use Harma's losses to offset income.

[¶ 5] After an audit, the Commissioner determined Hamich and Debbon improperly filed their returns using the combined report method, and should have instead used the single corporate entity method. Under the single entity method, the income or loss of each separate corporate entity is used as the starting point in computing its North Dakota taxable income, and the loss of a related corporation cannot be used to decrease the taxable income of another related corporation.

[¶ 6] Use of the single entity method resulted in the Commissioner assessing Hamich $2,476 and Debbon $23,235 in additional income taxes, statutory penalties and interest for the tax years involved. Hamich and Debbon protested the additional taxes and filed administrative complaints claiming the Commissioner erred in requiring them to report their North Dakota income using the single entity method. Hamich and Debbon argued the Commissioner's failure to allow use of the combined report method violated the equal protection clauses of the state and federal constitutions, N.D.C.C. Chapter 57–38.1, N.D.C.C. § 57–38–14(6), and N.D.A.C. § 81–03–05.1–08.

[¶ 7] The Commissioner adopted the findings, conclusions and order of the administrative law judge upholding the Commissioner's additional assessments against the corporations. Declining to rule on the constitutional question, see First Bank of Buffalo v. Conrad, 350 N.W.2d 580, 584–585 (N.D.1984), the administrative law judge decided requiring a North Dakota corporation with only North Dakota income to report that income using the single entity method conformed with the statutory scheme. The district court on appeal agreed with the administrative decision that the Commissioner's interpretation of the tax statutes allowed the Commissioner to require Hamich and Debbon to file their

returns using the single entity method. The court, however, further ruled:

> "[E]qual protection of the United States Constitution and the North Dakota Constitution was not afforded the taxpayers here. While the ... Commissioner ... treated all 100% North Dakota corporations the same as the taxpayers, the Commissioner treated the taxpayers differently than multi-state corporations. All the reasons advanced by the Commissioner for the disparate treatment are simply matters of convenience to the Commissioner. None of the reasons satisfies the 'rational relationship test.' The treatment of the taxpayers is 'rational' in the sense that it is good for the government to do things efficiently. Mere convenience, however, is not a sufficient government interest to allow unfair treatment of taxpayers.

> "The legislative history of § 57–38–14, N.D.C.C., clearly recognizes that dissimilar treatment of North Dakota and multi-state corporations is unfair and does not advance any recognized public policy."

[¶ 8] The court reversed the administrative decision and directed the Commissioner to allow Hamich and Debbon to file consolidated tax returns using the combined report method for tax years 1986 through 1991. The court also denied Hamich and Debbon's request for attorney fees under N.D.C.C. § 28–32–21.1, concluding the Commissioner's "position in this matter was substantially justified." The Commissioner appealed from the judgment reversing the administrative decision; Hamich and Debbon cross-appealed from the order denying their request for attorney fees.

## II

[¶ 9] The facts are undisputed. Because only questions of law are involved, the Commissioner's decision is fully reviewable by this court. *See Intern. Minerals & Chemical v. Heitkamp,* 417 N.W.2d 791, 792 (N.D.1987); N.D.C.C. § 28–32–19(1), (2) and (6).

### A

[¶ 10] A tax is imposed under N.D.C.C. § 57–38–30 "upon the taxable income of every domestic and foreign corporation received from the sources described" in N.D.C.C. §§ 57–38–12, 57–38–13, and 57–38–14. "Taxable income" is defined in N.D.C.C. § 57–38–01(8) as "the taxable income as computed for a[ ] ... corporation for federal income tax purposes under the United States Internal Revenue Code of 1954, as amended, plus or minus such adjustments as may be provided by this act and chapter or other provisions of law." N.D.C.C. § 57–38–32 further requires "[e]ach corporation that receives income from the sources designated in section 57–38–30, whether or not required to file an income tax return pursuant to the provisions of the United States Internal Revenue Code of 1954, as amended, shall, unless exempted by the provisions of section 57–38–09, make a return in such form as the tax commissioner may prescribe, stating specifically such facts as the tax commissioner may require for the purpose of making any computation required by this chapter."

[¶ 11] The parties dispute the Commissioner's authority under N.D.C.C. § 57–38–14. Section 57–38–14 provides:

> *"Allocation in special cases.* In the special cases mentioned in this section, the following principles may be applied in allocating corporate income:

> "1. Any corporation organized under the laws of North Dakota and subject to a tax under the provisions of this chapter, which maintains no regular place of business outside this state, except a statutory office, must be taxed upon its entire net income.

> \*     \*     \*     \*     \*     \*

> "3. Any corporation liable to report under this chapter and owning or controlling, either directly or indirectly, substantially all of the voting capital stock of another corporation, or of other corporations, may be required to make a consolidated report showing the combined net income, such assets of the corporation as are required for the purposes of this chapter, and such other information as the tax commissioner may require, but excluding in-

tercorporate stock holdings and intercorporate accounts.

"4. Any corporation liable to report under this chapter and owned or controlled either directly or indirectly by another corporation may be required to make a report consolidated with the owning company, showing the combined net income, such assets of the corporation as are required for the purposes of this chapter, and such other information as the tax commissioner may require, but excluding intercorporate stock holdings and intercorporate accounts.

\*   \*   \*   \*   \*   \*

"6. The tax commissioner may permit or require the filing of a combined report where substantially all the voting capital stock of two or more corporations liable to report under this chapter is owned or controlled by the same interests. The tax commissioner may impose the tax provided by this chapter as though the combined entire net income and segregated assets were those of one corporation, but in the computation, dividends received from any corporation whose assets, as distinguished from shares of stock, are included in the segregations may not be included in the net income.

\*   \*   \*   \*   \*   \*

"8. If it appears to the tax commissioner that the segregation of assets shown by any report made under this chapter does not reflect properly the corporate activity or business done, or the income earned from corporate activity, or from business done in this state because of the character of the corporation's business and the character and location of its assets, the tax commissioner is authorized and empowered to adjust the tax equitably."

[¶ 12] The administrative law judge interpreted N.D.C.C. § 57–38–14 as providing no clear statutory right on the part of a North Dakota corporation to choose whether to file using the single entity method or the combined report method. Because N.D.C.C.

§ 57–38–14(3), (4) and (6) grant the Commissioner discretionary authority to permit or require consolidated reports in certain circumstances, the administrative law judge reasoned the statute by implication contemplates the single entity method is the alternative method required for filing unless the combined report method is allowed in the Commissioner's discretion. *See* I J. Hellerstein and W. Hellerstein, *State Taxation* ¶ 8.03, at p. 8–28 (2d ed. 1993) (*State Taxation* ) (usual practice under early state income tax administration was to permit separate accounting, which "is a technique of carving out of the overall business of the taxpayer the activities taking place, the property employed in, and the income derived from, sources within a single State, and by accounting analysis ascertain the profits attributable to that portion of the business").

B

[¶ 13] When interpreting a statute to determine the Legislature's intent, we look first to the language of the statute and give it its plain, ordinary, and commonly understood meaning. *Goodleft v. Gullickson,* 556 N.W.2d 303, 306 (N.D.1996). If a statute is clear and unambiguous, we do not disregard the letter of the statute under the pretext of pursuing its spirit. *Jones v. Pringle & Herigstad, P.C.,* 546 N.W.2d 837, 840 (N.D.1996). Statutes must be construed as a whole to give each provision meaning and effect. *Stewart v. Ryan,* 520 N.W.2d 39, 45 (N.D. 1994). If a statute is ambiguous, extrinsic aids useful in construing the statute to determine legislative intent include the object sought to be obtained, the legislative history, and the administrative construction of the statute. *Reed v. Hillsboro Pub. Sch. Dist. No. 9,* 477 N.W.2d 237, 240 (N.D.1991). The administrative construction of a statute by the agency administering the law is entitled to deference if that interpretation does not contradict clear and unambiguous statutory language. *Western Gas Resources, Inc. v. Heitkamp,* 489 N.W.2d 869, 872 (N.D.1992), *cert. denied,* 507 U.S. 920, 113 S.Ct. 1281, 122 L.Ed.2d 675 (1993). Administrative deference is a particularly important consideration when an agency interprets and implements tax laws that are complex and technical in

nature. *True v. Heitkamp,* 470 N.W.2d 582, 587 (N.D.1991).

[¶ 14] According to an affidavit of a tax department official, the Commissioner's "long-standing interpretation of this statute is that a 100% North Dakota corporation must use the single entity method of calculating income and cannot file consolidated returns, regardless of whether or not the corporation is a member of an affiliated group of corporations and regardless of its federal filing method," and "[a]t no time has an affiliated group of 100% North Dakota corporations been allowed by the ... Commissioner to combine their income under these provisions of § 57–38–14." The administrative law judge concluded a fair reading of the entire statutory scheme confirmed the Commissioner's interpretation which was "reasonable ... in a complex area of law."

■ [¶ 15] Hamich and Debbon do not really contest the interpretation of N.D.C.C. § 57–38–14 by the administrative law judge, except to assert the discretion given the Commissioner in subsections (4) and (6) to allow consolidated returns is "grossly unfair." Instead, Hamich and Debbon assert other parts of state tax law compel the conclusion that N.D.C.C. § 57–38–14 does not mean what it appears to say and the corporations should be allowed to file using the combined report method. The taxpayers contend that because N.D.C.C. § 57–38–01.1 states federal taxable income is the starting point for North Dakota income tax calculations and there are no provisions which allow the Commissioner to redetermine the federal income of the corporations, they should not be required to separate their calculation of taxable income when they have previously filed a consolidated federal tax return permitted by federal law. Hamich and Debbon also assert the Uniform Division of Income for Tax Purposes Act (UDITPA), N.D.C.C. Chapter 57–38.1, is not applicable in this case and in no manner precludes them from filing a consolidated state return using the combined report method. Hamich and Debbon also assert recent statutory enactments and legislative history support their right to file a consolidated income tax return for the tax years in question and establish a public policy which,

if they are not allowed to file using the combined report method, would lead to an absurd construction of the tax statutes.

1

■ [¶ 16] Under North Dakota law, federal taxable income is the simplified starting point for computing state income tax. *See, e.g., Intern. Minerals & Chemical,* 417 N.W.2d at 794. The Legislature declared its intentions in N.D.C.C. § 57–38–01.1:

"It is the intent of the legislative assembly to simplify the state income tax laws and to demonstrate that federal legislation is not necessary to deal with certain interstate tax problems, by adopting the federal definition of taxable income as the starting point for the computation of state income tax by all taxpayers and providing the necessary adjustments thereto to substantially preserve and maintain existing exemptions and deductions. It is the further intent of the legislative assembly to eliminate double taxation of the earnings of small corporations by recognizing a subchapter S election when made for federal income tax purposes."

Nevertheless, the Legislature still made this simplified starting point subject to "such adjustments as may be provided by this act and chapter or other provisions of law." N.D.C.C. § 57–38–01(8). We reject Hamich and Debbon's argument that "federalization" of North Dakota's income tax requires the Commissioner to recognize, apply, and honor their federal income tax filing elections in this case.

[¶ 17] First, the Commissioner, by requiring use of the single entity method, did not make an adjustment to either Hamich or Debbon's own federal taxable income. Each corporation calculated its federal taxable income based on federal rules and regulations defining "income," and then merely elected to file a federal consolidated return so the taxpayers could combine their income to take advantage of Harma's losses in the computation of their federal tax liability. Thus, contrary to Hamich and Debbon's argument, no adjustments were made to their own federal taxable income calculations; rather, the Commissioner's single entity method of com-

puting income constitutes a non-recognition of the corporations' federal election to file federal consolidated returns.

[¶ 18] The statutory scheme does not require the Commissioner to be bound by a corporation's federal tax return requirements or elections. Under N.D.C.C. § 57-38-32, a corporation must file a state income tax return, even if it was not required to file a federal tax return, "in such form as the . . . commissioner may prescribe, stating specifically such facts as the . . . commissioner may require for the purpose of making any computation required by this chapter." N.D.C.C. § 57-38-01(10) further provides "[a]ny term, as used in this code, as it pertains to the filing and reporting of income, . . . has the same meaning as when used in a comparable context in the laws of the United States relating to federal income taxes, unless a different meaning is clearly required or contemplated." These statutes give the Commissioner the discretionary authority to determine the form and manner of filing for a corporation, and N.D.C.C. § 57-38-14 limits the use of consolidated returns and combined reporting to instances when the Commissioner, in the exercise of discretion, determines it is necessary to properly report income for North Dakota.

[¶ 19] Federal taxable income is intended to be the simplified starting point for calculating state income tax. But, just as federal tax law does not dictate the interpretation of state statutory adjustments thereafter made to taxable income, see *Kinney Shoe Corp. v. State by Hanson*, 552 N.W.2d 788, 792 (N.D. 1996), neither does federal tax law dictate a corporation's form and manner of filing state income tax returns. Filing federal consolidated returns to combine income is a privilege granted by federal law under 26 U.S.C.A. § 1501. Filing consolidated returns and combined reporting for state tax purposes was, during the tax years in question, the exception to the rule and allowable only when the Commissioner found it necessary under N.D.C.C. § 57-38-14 to properly report corporate income in the state.

[¶ 20] We conclude there is no irreconcilable conflict between the Commissioner's disallowance of Hamich and Debbon's consol-

idated income tax return and the federalization under N.D.C.C. § 57-38-01.1 of the state income tax.

2

[¶ 21] When a taxpayer has income from business activity which is taxable both within and without North Dakota, UDITPA, N.D.C.C. Chapter 57-38.1, sets forth uniform rules for apportioning income through the use of a three-factor formula based on property, payroll, and sales to determine the portion of business income attributable to North Dakota. *See NL Industries v. State Tax Com'r*, 498 N.W.2d 141, 147 n. 4 (N.D.1993); *True*, 470 N.W.2d at 584; *Minnesota Min. and Mfg. Co. v. Conrad*, 418 N.W.2d 276, 281 (N.D.1987); *Intern. Minerals & Chemical*, 417 N.W.2d at 792.

[¶ 22] The parties agree UDITPA is not applicable in this case because none of the corporations have "income from business activity which is taxable both within and without this state, . . ." N.D.C.C. § 57-38.1-02. Although Hamich and Debbon assert UDITPA does not preclude them from filing a consolidated return, UDITPA's inapplicability does not fortify their argument that the Commissioner should have allowed them to file a consolidated tax return for state income tax purposes.

3

[¶ 23] In 1995 the Legislature amended N.D.C.C. § 57-38-14 to provide:

"11. Notwithstanding any other provision of law, two or more North Dakota domestic corporations, affiliated as parent and subsidiary, and filing a federal consolidated tax return, shall file a combined report and consolidated return for income tax under this chapter."

The amendment was made "effective for taxable years beginning after December 31, 1994." 1995 N.D.Sess.Laws Ch. 560, § 2.

[¶ 24] Hamich and Debbon assert the 1995 legislative amendment reflects public policy existing during the tax years involved here, and to construe N.D.C.C. § 57-38-14 as authorizing the Commissioner to refuse to allow consolidated corporate tax returns during those years would lead to an absurd result in

violation of then-existing public policy. We disagree.

[¶ 25] This Court has said recently enacted legislation may be an indication of, and in accord with, an earlier public policy, absent evidence to the contrary. *See Davis v. Auto–Owners Ins. Co.,* 420 N.W.2d 347, 349 (N.D.1988); *Jerry Harmon Motors v. Farmers U. Grain Term.,* 337 N.W.2d 427, 431 (N.D.1983). There is evidence to the contrary here. The Legislature did not make the amendment retroactive and specifically set forth an effective date. The legislative history clearly demonstrates the amendment was a change in current law and policy. *See* 1995 Senate Finance and Taxation Committee Hearing on Senate Bill 2185, January 10, 1995; Written Comments of Rod Backman to House Finance and Taxation Committee on Senate Bill 2185, February 7, 1995. The legislative enactment and history demonstrates a change in law and policy, not a reaffirmation of pre-existing law and policy. *Compare NL Industries,* 498 N.W.2d at 143–145 (legislative history revealed amendment affirmed Commissioner's longstanding administrative practice).

[¶ 26] Hamich and Debbon also assert the Commissioner's application of the statute leads to an absurd result because it would be substantially detrimental to North Dakota corporations while providing substantial advantages to out-of-state corporations. While statutes should not be construed to reach absurd results, *see State v. Trosen,* 547 N.W.2d 735, 739 (N.D.1996), that rule of construction is not easily applied in the review of tax legislation. Presumably the overall business of the taxpayers could have been conducted by a single corporate structure, but they chose instead for their benefit to conduct the overall business through the use of a parent and two subsidiary corporations. If a single corporate structure had been used, the losses complained of here would have been offset against earnings, with the resulting tax advantage now sought by this litigation. *See Handlery v. Franchise Tax Board,* 26 Cal. App.3d 970, 103 Cal.Rptr. 465, 474 (1972), *appeal dismissed,* 410 U.S. 921, 93 S.Ct. 1373, 35 L.Ed.2d 582 (1973). The taxpayers' problems in this case are attributable to the corporate form they chose to do their business.

[¶ 27] Moreover, we doubt corporations will always fare better by filing under the combined return method rather than the single entity basis. The separate accounting or single entity method was once the usual practice under state income tax administration. *See* I *State Taxation* ¶ 8.03. We cannot say allowing the Commissioner to require intrastate corporations to file under the single entity method leads to an absurd result under the tax statutes or conflicted with then-existing public policy.

[¶ 28] We conclude the 1995 legislative amendment demonstrates the Commissioner was properly applying the law during the tax years at issue.

### C

[¶ 29] When an administrative agency interprets and implements a tax law which is of a complex and technical nature, the agency's interpretation will be upheld unless it exceeds the bounds of the authorizing legislation or is arbitrary and unjust. *True,* 470 N.W.2d at 587. Hamich and Debbon have not convinced us the Commissioner's interpretation exceeded the bounds of legislation, or is arbitrary and unjust.

### III

[¶ 30] Hamich and Debbon assert, and the district court held, the Commissioner's single entity filing requirement violated their equal protection rights under the state and federal constitutions. Hamich and Debbon do not contend the analysis, for purposes of the issue presented here, is different under the equal protection guarantee of the state constitution, *see* N.D. Const. Art. I, § 21, as opposed to the federal constitution, *see* U.S. Const. Amend. XIV, § 1, so we make no distinction in our analysis of this issue.

[¶ 31] The equal protection guarantee does not forbid classifications, but simply keeps government decisionmakers from treating differently persons who are in all relevant respects alike. *Nordlinger v. Hahn,* 505 U.S. 1, 10, 112 S.Ct. 2326, 2331, 120 L.Ed.2d 1 (1992). Where, as here, a statute

regulates social or economic matters without using suspect classifications or involving fundamental rights and is challenged on equal protection grounds, we apply the rational basis standard of review. *Best Products Co., Inc. v. Spaeth,* 461 N.W.2d 91, 96 (N.D.1990). This test has been described as "a relatively relaxed standard reflecting the Court's awareness that the drawing of lines that create distinctions is peculiarly a legislative task and an unavoidable one. Perfection in making the necessary classifications is neither possible nor necessary." *Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 314, 96 S.Ct. 2562, 2567, 49 L.Ed.2d 520 (1976). *See also Haney v. N.D. Workers Compensation Bureau,* 518 N.W.2d 195, 197 (N.D.1994). We have noted the standard is especially deferential in the context of classifications made by complex tax laws. *NL Industries,* 498 N.W.2d at 149.

[¶ 32] Under the rational basis test, a legislative classification will be upheld unless it is patently arbitrary and bears no rational relationship to a legitimate government purpose. *B.H. v. K.D.,* 506 N.W.2d 368, 375 (N.D.1993). For purposes of rational basis review, equal protection does not demand that a legislature or governing decisionmaker actually articulate at any time the purpose or rationale supporting its classification; however, there must be an identifiable purpose that may conceivably or reasonably have been that of the government decisionmaker. *NL Industries.* Thus, if a reviewing court can conceive of a reason justifying the choice made by the legislature or government decisionmaker in service of a legitimate end, the statute does not violate the equal protection clause. *Best Products Co., Inc.,* 461 N.W.2d at 97.

[¶ 33] A tax law that falls impartially on all corporations of the same kind or class satisfies the requirement of equality and uniformity, although other corporations of a different character are taxed at a different rate, or on a different basis, or not at all. *Signal Oil and Gas Company v. Williams County,* 206 N.W.2d 75, 82 (N.D.1973). The district court essentially held the Commissioner's different treatment of intrastate and multistate corporations did not survive the

rational basis test because the Commissioner's asserted reasons were "simply matters of convenience" insufficient to allow "unfair" treatment of intrastate corporations. We disagree with the district court's reasoning.

[¶ 34] While it might be politically unwise to treat corporations which conduct solely intrastate business less favorably than corporations which conduct multistate business, tax schemes that treat domestic corporations or residents less favorably than foreign corporations or nonresidents are not uncommon, and have passed constitutional muster under equal protection analysis. *See* I *State Taxation* ¶ 3.07[2][a]. For example, in *Huntington Nat'l Bank v. Limbach,* 71 Ohio St.3d 261, 643 N.E.2d 523 (1994), a bank with a physical presence in the state contested, as a denial of equal protection, imposition of a franchise tax on its net worth at a rate almost three times greater than the rate imposed on banks having no place of business in the state. The Supreme Court of Ohio found no equal protection violation:

"[H]aving a physical location in Ohio for receiving deposits in Ohio is a rational basis on which to distinguish Huntington from foreign banks. With this locational advantage, Huntington will receive more Ohio business than a foreign bank because, according to the testimony, more people will bank with the local bank. Of course, with this physical presence in Ohio comes Ohio's responsibility to protect the bank from theft and fire and to provide roads so that Huntington's customers may reach the bank to deposit their funds. Thus, a legitimate state interest exists to tax resident banks at a higher rate than foreign ones."

*Huntington Nat'l Bank,* 643 N.E.2d at 524.

[¶ 35] Similarly, in *Williams v. City of Chicago,* 66 Ill.2d 423, 6 Ill.Dec. 208, 362 N.E.2d 1030, *cert. denied,* 434 U.S. 924, 98 S.Ct. 402, 54 L.Ed.2d 282 (1977), the Supreme Court of Illinois upheld on equal protection grounds a city ordinance imposing a lower tax rate for the lease or rental of personal property on nonresidents than the rate imposed on residents, and an ordinance imposing on nonresidents a lower tax rate on transfers of title to real property located

within the city. Noting administrative convenience and expenses of collection may have been considered in the decisionmaking process, the court reasoned:

"It is conceivable that the city council may have determined it would be impractical to impose a tax on all leases or rentals of personal property, some of which might occur infrequently or be difficult and unduly expensive to administer. Or, it may have been thought that the tax would be unduly burdensome when applied to certain types of leasing transactions in view of the particular nature of the property or transaction involved or due to the existence of other forms of taxation or regulation which affect such property or transactions. The provisions of the ordinance applying a lower tax rate to real estate transactions involving nonresidents could reflect a determination by the city council that nonresidents make less use of city services than do residents and for that reason should be taxed at a reduced rate. These considerations furnish a sufficient justification for the classifications in question, and in our opinion the complaints in both cases failed to allege a sufficient factual basis to overcome the presumptive constitutionality of the ordinance."

*Williams,* 6 Ill.Dec. at 214, 362 N.E.2d at 1036.

[¶ 36] Justice Brennan, in a concurring opinion in *Allied Stores of Ohio, Inc. v. Bowers,* 358 U.S. 522, 531–533, 79 S.Ct. 437, 443–444, 3 L.Ed.2d 480 (1959), commented on the different results in equal protection cases striking down tax laws imposing heavier burdens on nonresidents than residents and equal protection cases upholding tax laws imposing heavier burdens on residents than nonresidents, and suggested the only way to reconcile the results was to "[v]iew[ ] the Equal Protection Clause as an instrument of Federalism, ..." Justice Brennan reasoned a classification based on residence which operates against state residents "clearly presents no state action disruptive of the federal pattern," and said in such a case "any relief forthcoming must be obtained from the State Legislature." *Bowers,* 358 U.S. at 533, 79

S.Ct. at 444 (Brennan, J., concurring). As these cases demonstrate, it is not difficult to uphold under equal protection challenges tax laws that place additional burdens on domestic corporations or residents thereby favoring foreign corporations or nonresidents.

[¶ 37] There is a rational basis for the distinction made in this case. While North Dakota may constitutionally tax all of the income generated by a North Dakota intrastate corporation, it may not constitutionally tax a multistate corporation on any value earned outside North Dakota borders. *True,* 470 N.W.2d at 585. Although the separate accounting or single entity method of determining income taxable in North Dakota was preferred for dividing the income of a unitary multistate business among the states in which the business is taxable, the method was largely abandoned as being inefficient and impractical for apportioning income of a unitary multistate business after UDITPA, N.D.C.C. Chapter 57–38.1, was enacted. *See* I *State Taxation* § 8.03. UDITPA and combined reporting became the preferred method for apportioning the income of a unitary multistate business group of corporations, and is the benchmark against which other apportionment formulas are judged in meeting the dictates of the due process and commerce clauses that a state not tax value earned outside its borders. *True; Minnesota Min. and Mfg. Co.,* 418 N.W.2d at 277.

[¶ 38] *Handlery,* 26 Cal.App.3d 970, 103 Cal.Rptr. 465, is a case very similar to this one. A group of corporations which conducted all of their activities and derived all of their income from sources within California sought the right to file a combined income tax report, claiming they were an intrastate unitary business. The Franchise Tax Board required the corporations to file separately using the separate accounting method, thus denying intrastate businesses the benefit of offsetting against earnings losses of a related corporation enjoyed by unitary businesses conducting business both within and without California. The intrastate group of corporations argued this disparate treatment violated their equal protection rights.

[¶ 39] After noting combined reporting, the unitary business concept, and formula appor-

tionment were designed to comply with due process and commerce clause requirements, the court said:

> "It seems desirable at this point to emphasize the meaning and coverage of the term under consideration. Insofar as we can determine, 'unitary business' has always been used to denote the activity of one or more corporations or businesses as a 'unit,' *in two or more states or jurisdictions.* It is a technical expression peculiar to the area of state taxation. Research discloses no application of the term to one or more businesses operating in any manner solely within a single state. (See generally, Words and Phrases (perm. ed.), vol. 43.) Nor, apart from plaintiffs' briefs have we found anywhere, mention of an *'intrastate'* unitary business."

*Handlery,* 103 Cal.Rptr. at 469 (emphasis in original). The court rejected the intrastate corporations' equal protection argument, even though "the complained of classification does fall considerably short of perfection:"

> " 'The classification alleged to be arbitrary was made in order to comply with the requirement of the Federal Constitution as interpreted and applied by the highest court of the state. Action by a state taken to observe one prohibition of the Constitution does not entail the violation of another.' "

*Handlery,* 103 Cal.Rptr. at 474 (quoting *Packer Corp. v. Utah,* 285 U.S. 105, 109, 52 S.Ct. 273, 274, 76 L.Ed. 643 (1932)). California did not enact legislation permitting intrastate "unitary" businesses to file combined reports until 1980. *See* I *State Taxation* ¶ 8.12[2], at pp. 8–106—8–107 n. 374. The *Handlery* court's equal protection analysis is persuasive in this case.

[¶ 40] Given the state of the law and traditional use of combined reports for multistate unitary businesses, the Commissioner understandably could have balked at applying multistate reporting concepts to intrastate corporations. The Commissioner could also have properly and reasonably determined the single entity method more accurately reflected Hamich and Debbon's income derived solely within North Dakota.

[¶ 41] The greater tax burden placed upon Hamich and Debbon resulting from the Commissioner's requirement they file using the single entity method could also conceivably be justified by the benefits they receive from North Dakota. *See Huntington Nat'l Bank.*

[¶ 42] We conclude there was a rational basis for the Commissioner's requirement that Hamich and Debbon file their returns during the tax years in question using the single entity method rather than the combined report method. The district court erred in holding Hamich and Debbon's equal protection rights were violated in this case.

## IV

[¶ 43] In their cross-appeal, Hamich and Debbon assert the trial court erred in failing to award them attorney fees under N.D.C.C. § 28–32–21.1(1), which requires a court, in the case of a final agency order, to award attorney fees against an agency which acts "without substantial justification." The trial court found the Commissioner's "position in this matter was substantially justified."

[¶ 44] In reviewing a court's determination on substantial justification, we apply an abuse of discretion standard. *Walton v. N.D. Dept. of Human Services,* 552 N.W.2d 336, 341 (N.D.1996). We find no abuse of discretion here. The Commissioner's position was not only substantially justified, it was correct.

[¶ 45] We reverse the judgment reversing the Commissioner's decision, and we affirm the order denying attorney fees.

[¶ 46] VANDE WALLE, C.J., and MARING, MESCHKE and SANDSTROM, JJ., concur.