2016 ND 194

**Edward P. FERGUSON and Lavonna M. Ferguson, Plaintiffs and Appellees**

v.

**CITY OF FARGO, Defendant and Appellant.**

No. 20160067.

Supreme Court of North Dakota.

Oct. 4, 2016.

Michael S. Raum (argued) and Elizabeth L. Alvine (appeared), Fargo, N.D. for plaintiffs and appellees.

Jane L. Dynes (argued) and Ronald H. McLean (on brief), Fargo, N.D. for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] The City of Fargo appealed a judgment declaring an ordinance relating to construction on property located near rivers unconstitutional under the equal protection clauses of the North Dakota and United States Constitutions. We reverse, concluding the ordinance's distinction between platted and unplatted property is rationally related to Fargo's interest in limiting new construction on property near rivers.

I

[¶ 2] After historic flooding, Fargo enacted Ordinance 4818 in May 2012 relating to construction on property near the Red, Wild Rice, and Sheyenne Rivers. According to the affidavit of Fargo's city engineer, Fargo enacted Ordinance 4818 to "strictly limit, or entirely prevent, new construction within a specified distance from all river banks and drains to protect the health and safety of its citizens, protect private property and protect City infrastructure from floodwaters, slumping and the unstable river bank soils of the Red River Valley." The ordinance establishes two setback areas located a certain distance from a river's center line: (1) the Minimal Disturbance Zone Setback ("MDZS"), and (2) Limited Disturbance Zone Setback ("LDZS"). The setback areas apply to all lands along the Red, Wild Rice, and Sheyenne Rivers. With limited exceptions, construction is generally prohibited within the setback areas.

[¶ 3] The ordinance creates a distinction between platted and unplatted property regarding the ordinance's exceptions to

the prohibition on construction. Platted property has been subdivided into blocks and lots. Unplatted property has not been subdivided. Owners of vacant property platted before the ordinance's effective date may apply for a waiver from Fargo's city commission. The granting of a waiver allows the property owner to construct new buildings or structures within the setback areas. Owners of unplatted property may not apply for a waiver allowing construction of new buildings within the setback areas.

[¶ 4] Edward and Lavonna Ferguson own approximately 6 acres of unplatted property adjacent to the Sheyenne River that is partially within the ordinance's setback areas. Fergusons began occupying the property in 1998 and Fargo annexed the property in 2002. After Ordinance 4818 went into effect, Fergusons requested a waiver seeking to develop their property into multiple single-family duplexes. The Fargo city commission denied Fergusons' request because the property is not platted.

[¶ 5] The Fergusons brought a declaratory judgment and inverse condemnation action against Fargo, seeking a declaration that Ordinance 4818 violates the equal protection clauses of the North Dakota and United States Constitutions because it treats platted and unplatted property differently. In response Fargo argued it had a legitimate interest in treating platted and unplatted property differently to limit or prevent new construction on river property subject to flooding. After a hearing on the parties' competing summary judgment motions, the district court concluded that the ordinance treated platted and unplatted property differently and that "[p]latting does not change the character of the land at issue" and "[w]hether land is platted or unplatted does not make it more or less likely to be subject to slumping or flooding." The court concluded the ordinance's distinction between platted and unplatted property was not rationally related to Fargo's interest in preventing new construction on river bank lands subject to soil instability or flooding and the management of waiver requests. The court declared the ordinance unconstitutional as applied to Fergusons and others similarly situated. The court also dismissed Fergusons' inverse condemnation claim without prejudice.

II

[¶ 6] Fargo argues Ordinance 4818 is constitutional under the equal protection clauses of N.D. Const. art. I, § 21 and U.S. Const. amend. XIV, § 1, because the distinction between platted and unplatted property is rationally related to a legitimate government interest in limiting new construction on property subject to flooding.

[¶ 7] We discussed the applicable standard of review for summary judgment in *McCrothers Corp. v. City of Mandan*, 2007 ND 28, ¶ 7, 728 N.W.2d 124:

> Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. Whether the district court properly granted summary judgment is a question of law that we review de novo on the record. Summary judgment is appropriate if the issues in the case are such that the resolution of any factual disputes will not alter the result.

(Citations omitted.)

[¶ 8] Neither party argues there are disputed issues of material fact; the sole issue to be resolved involves the

constitutionality of Ordinance 4818. In considering the constitutionality of a statute, this Court has stated:

> Whether a statute is unconstitutional is a question of law, which is fully reviewable on appeal. *Best Products Co., Inc. v. Spaeth*, 461 N.W.2d 91, 96 (N.D. 1990). " 'All regularly enacted statutes carry a strong presumption of constitutionality, which is conclusive unless the party challenging the statute clearly demonstrates that it contravenes the state or federal constitution.' " *In re P.F.*, 2008 ND 37, ¶ 7, 744 N.W.2d 724 (quoting *Olson v. Bismarck Parks and Recreation Dist.*, 2002 ND 61, ¶ 11, 642 N.W.2d 864). " 'The justice, wisdom, necessity, utility and expediency of legislation are questions for legislative, and not for judicial determination.' " *Manikowske v. North Dakota Workmen's Comp. Bureau*, 338 N.W.2d 823, 825 (N.D.1983) (quoting *Asbury Hosp. v. Cass County*, 72 N.D. 359, 7 N.W.2d 438, 442 Syllabus ¶ 11 (1943)). This Court exercises the power to declare legislation unconstitutional with great restraint. *MCI Telecomms. Corp. v. Heitkamp*, 523 N.W.2d 548, 552 (N.D.1994).

*Teigen v. State*, 2008 ND 88, ¶ 7, 749 N.W.2d 505. Those principles apply to municipal ordinances. *See Olson v. City of West Fargo*, 305 N.W.2d 821, 823–24 (N.D. 1981).

[¶ 9] The equal protection clause does not forbid classifications, but prevents "government decisionmakers from treating differently persons who are in all relevant respects alike." *Hamich, Inc. v. State ex rel. Clayburgh*, 1997 ND 110, ¶ 31, 564 N.W.2d 640. The rational basis standard of review is generally applied when legislation regulates economic or social matters without using suspect classifications or involving fundamental rights. *Id.* The parties here agree Ordi-

nance 4818 is subject to the rational basis standard of review.

[¶ 10] Under the rational basis test, a governmental classification will be sustained "unless it is arbitrary and bears no rational relationship to a legitimate governmental interest." *Teigen*, 2008 ND 88, ¶ 25, 749 N.W.2d 505. "This test has been described as 'a relatively relaxed standard reflecting the Court's awareness that the drawing of lines that create distinctions is peculiarly a legislative task and an unavoidable one. Perfection in making the necessary classifications is neither possible nor necessary.' " *Hamich*, 1997 ND 110, ¶ 31, 564 N.W.2d 640 (quoting *Massachusetts Bd. of Ret. v. Murgia*, 427 U.S. 307, 314, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976)). We have further stated:

> For purposes of rational basis review, equal protection does not demand that a legislature or governing decisionmaker actually articulate at any time the purpose or rationale supporting its classification; however, there must be an identifiable purpose that may conceivably or reasonably have been that of the government decisionmaker. Thus, if a reviewing court can conceive of a reason justifying the choice made by the legislature or government decisionmaker in service of a legitimate end, the statute [or ordinance] does not violate the equal protection clause.

*Haugland v. City of Bismarck*, 2012 ND 123, ¶ 42, 818 N.W.2d 660 (quoting *Hamich*, at ¶ 32).

[¶ 11] Here, Fargo's stated primary purpose in enacting Ordinance 4818 was to limit or prevent new construction within setback areas near river banks and drains to protect its citizens, protect private property, and protect city infrastructure from Red River Valley floodwaters. Fargo's rationale for the ordinance is aptly

explained in an affidavit of April Walker, Fargo's city engineer:

Following the historic 2009 flooding in Fargo, the Board of City Commissioners for the City of Fargo and City Staff, with input from developers, builders and others in the community, worked to develop an ordinance to limit construction on land adjacent to the Wild Rice River, the Sheyenne River and the Red River within the City of Fargo and its extraterritorial jurisdiction.

The City of Fargo, its representatives and staff, are knowledgeable of the flooding and river bank instability issues associated with the Red and Wild Rice rivers. They are also knowledgeable regarding the river bank instability problems relating to the Sheyenne River. The City used the best information available to it in drafting its river setback ordinance.

The existence of the Sheyenne Diversion does not alleviate the need to limit new construction along the Sheyenne River's banks. During the process of drafting the river setback ordinance, the City Commission heard testimony from NDSU Geology Professor Donald Schwert.

Professor Schwert stated that the geological setting of the rivers in the Fargo–Moorhead area is identical. The rivers are flowing over the same geology. *Id.* Professor Schwert told the City Commission that the Sheyenne has the same river bank soil stability issues as the Red and the Wild Rice rivers. *Id.* River bank instability, or slumping, is a recognized danger to people and property in the Red River Valley.

. . .

Throughout the process of creating the river setback ordinance, a distinction was made between platted lots and un-platted parcels. This distinction was made to recognize that platted lots had completed the platting process. Owners/developers had invested considerable time and money to obtain "platted" status for their lots through the development process before the River Setback Ordinance was enacted.

Previously subdivided (platted) lands had been through measurable, affirmative steps in the process of development. City staff had already reviewed applications for potential development to assure that utilities, roadways, emergency services and flood plain management requirements could be satisfied.

Ordinance 4818 provides an opportunity to seek a waiver for platted lands in recognition and consideration of the completed development steps that previously occurred. Waivers are subject to review criteria established by the City, including a geotechnical study to test soil stability. The number of platted lands is a known quantity and therefore the number of possible waivers is limited.

Parcels that were un-platted at the time Ordinance 4818 was enacted had not been subjected to the plat application review and approval procedures of the Planning Department, the Planning Commission and the City Commission. There are approximately 90 un-platted river properties within the City of Fargo and its Extra-territorial jurisdiction. It is unknown if or when those un-platted parcels will be subdivided for development. It is also unknown how many river lots may emerge from the subdivision of those un-platted properties. Ordinance 4818 lessens the impact of this uncertainty in regards to new river bank construction by limiting the waiver provision to platted lots only.

[¶ 12] Subdividing municipal property creates parcels with a block and lot legal

description. N.D.C.C. § 40–50.1–01. A plat is a recorded map of a municipal subdivision. *Id.* Fargo equates platting with subdividing. James Gilmour, Fargo's Planning and Development Director, submitted an affidavit describing Fargo's platting process and the distinction between platted and unplatted property:

The platting process is defined by statute. *See,* N.D.C.C. § 40–50.1–01. The City of Fargo has enacted regulations regarding the subdivision of land. *See,* N.D.C.C. § 4[0]–48–20 and [Fargo Land Development Code] LDC § 20–907. In order to develop multiple lots for sale, an owner or developer must submit a proposed plan of the subdivision (plat) for approval. *See,* LDC § 20–1201(64). Subdividing, or platting, is the Planning Department's first chance to review subdivision proposed applications to determine if roadways, emergency services, utility services and flood plain management requirements can be satisfied.

All applications for subdivision, or platting, are submitted to the Planning Department.... A preliminary plat is required to be submitted with the application. This is usually prepared by a surveyor/developer.

Planning Department Staff meet with the plat applicant, the applicant's developer or other representative and review the application to make sure it is complete. Staff obtain information necessary to consider the plat request. Planning Department staff often meet with plat applicants several times before the necessary detail has been provided. In addition to the application fee, applicants must pay for the services of surveyors or engineers to satisfy platting requirements.

. . .

When the plat application is complete, Planning Department staff review the submission and determine if the necessary requirements are met. This process requires that other City departments comment on the application. When all required department opinions have been gathered, planning staff complete a report and recommendation.

Once the subdivision plat is approved, the next step is to obtain building permits. No building permits for new construction can be issued by the City of Fargo for a project on something other than a "Legal Lot." *See,* LDC § 20–0913[.] A "Legal Lot" is a lot that is "shown on a Subdivision plat that has been recorded in the office of the County Registrar or a lot created through boundary line adjustments." *See,* LDC § 20–1201(28).

. . .

In the fall of 2012 Mr. Ferguson approached the Planning Department about obtaining a waiver under Ordinance 4818. He was advised that his property was not eligible for a waiver because it was un-platted. He was also advised that he could go forward with development on the portion of his parcel that was not within the MDZS or LDZS.

In response to Mr. Ferguson's request that his property be eligible for a waiver, under Ordinance 4818, my staff reviewed the number of platted and unplatted river properties impacted by Ordinance 4818. There are approximately 90 un-platted river properties containing hundreds of acres within the City of Fargo and its extraterritorial jurisdiction. The total number of platted but vacant properties within the City limits and its extraterritorial jurisdiction is approximately 290.

Approval for new construction has always required a series of steps from

zoning to platting to permitting and construction. An approved subdivision plat is documentation of an owner's investment in and commitment to the development and resale process.

The goal of Ordinance 4818 and the City of Fargo's growth plan, as it applies to construction along rivers and drains, is to limit new construction near river banks and drains to protect the health and safety of Fargo residents and their property from floodwaters, bank instability and slumping.

Lots platted prior to the passage of Ordinance 4818 are finite in number. The waiver process acknowledges the owner's investment in the development process for platted lots and provides the possibility, if certain criteria are met, for construction within the setback. The numbers and dimensions of river lots that might result from the eventual subdivision of un-platted parcels is presently unknowable. The distinction between platted and un-platted lands is meant to address that uncertainty by limiting construction on those undetermined lots.

[¶ 13] Under the rational basis standard of review, a government decision-maker need not articulate the rationale supporting a classification. *Haugland*, 2012 ND 123, ¶ 42, 818 N.W.2d 660. Here, Fargo distinguished platted from unplatted property near rivers because there are a finite number of vacant platted properties, and developers and owners have shown an intent to build in the future by completing the platting process or purchasing a platted property.

[¶ 14] The district court found that "[p]latting does not change the character of the land at issue" and "[w]hether land is platted or unplatted does not make it more or less likely to be subject to slumping or flooding." Fargo enacted Ordinance 4818 to prevent or limit new construction on property near rivers. Fargo's purpose in limiting new construction within setback areas was not to prevent flooding, but to reduce damage to private property and city infrastructure from potential flooding. Fargo has a legitimate interest in reducing damage to private property and city infrastructure from potential flooding, and limiting new construction near river property is one way to achieve that interest.

[¶ 15] Neither party argues platting or subdividing changes the property's physical character. Fargo's distinction between platted and unplatted river property is based on the property's legal character. The approximately 290 vacant platted properties have undergone an initial governmental review process and there is a reasonable expectation that the properties will be subject to further building or development. It is unknown if or when future building or development will occur on the approximately 90 unplatted properties consisting of hundreds of acres. Fargo's distinction between platted and unplatted property under Ordinance 4818 limits the amount of possible waiver applications under the ordinance to a finite number and accomplishes Fargo's goal of limiting new construction near river property. Fargo's distinction between platted and unplatted property bears a rational relationship to a legitimate government interest of limiting new construction on property subject to flooding. We hold Ordinance 4818 and its distinction between platted and unplatted property satisfies the rational basis standard of scrutiny, and does not violate N.D. Const. art. I, § 21 or U.S. Const. Amend. XIV, § 1.

### III

[¶ 16] The judgment declaring Ordinance 4818 unconstitutional is reversed.

[¶ 17] CAROL RONNING KAPSNER, LISA FAIR McEVERS, and DALE V. SANDSTROM, JJ., concur.

CROTHERS, Justice, dissenting.

[¶ 18] I respectfully dissent.

[¶ 19] Fargo and the majority justify disparate treatment between platted and unplatted property based on what they articulate as the city's "legitimate interest in reducing damage to private property and city infrastructure from potential flooding" and "legitimate government interest of limiting new construction on property subject to flooding." Majority opinion, ¶¶ 14 and 15. These justifications oversimplify the issue and mask the real problem.

[¶ 20] Platted property owners can seek waiver of building restrictions within the setback areas. Thus, building can occur in the protected zones notwithstanding the restrictions. But, after adoption of Ordinance 4818 in May of 2012, owners of unplatted property in Fargo and outside of Fargo but within Fargo's extraterritorial zoning jurisdiction do not enjoy the same right. Denial of the right is simply because their land was not platted before May of 2012. As a result, they have no ability to ever request a waiver from the building restrictions. After May of 2012 owners of unplatted property can plat their property but even if platted cannot apply for a waiver. The plain result is that unplatted property is frozen in time. But platted property is not.

[¶ 21] The differing treatment of adjacent landowners is based solely on whether the land was platted in 2012. This requires consideration whether platting land before May of 2012 advances the governmental interests in reducing flooding and damage to property. Examination shows that it does not.

[¶ 22] The majority concludes, "Fargo's stated primary purpose in enacting Ordinance 4818 was to limit or prevent new construction within setback areas near river banks and drains to protect its citizens, protect private property, and protect city infrastructure from Red River Valley floodwaters." Majority opinion, ¶ 11. Yet the only protection not subject to waiver is for unplatted lands. Platted lands within setback areas can be developed upon receipt of a waiver.

[¶ 23] The record shows building continues on the platted land. While the Fergusons were barred from applying for a waiver, in 2012 four of their neighbors were granted waivers to build. All of those waivers were within 10 blocks of the Fergusons. All of the waiver properties are on the same street as the Fergusons. All of the waiver properties border the Sheyenne River, just like the Fergusons. The *only* difference is that the waiver properties happened to be within a platted area before 2012 and the Ferguson's property is not.

[¶ 24] The rationale advanced by Fargo for its distinction included the following:

"Throughout the process of creating the river setback ordinance, a distinction was made between platted lots and unplatted parcels. This distinction was made to recognize that platted lots had completed the platting process. Owners/developers had invested considerable time and money to obtain 'platted' status for their lots through the development process before the River Setback Ordinance was enacted."

[¶ 25] While the owner/developer's investment of time and money may correlate to Fargo's potential liability for halting all development of platted land, I respectfully submit it provides no rational basis for permitting waivers in platted land and pre-

venting waivers in land that was unplatted in May of 2012.

[¶ 26] Fargo also argues the platting process advanced the no-waiver provision for unplatted land:

"Previously subdivided (platted) lands had been through measurable, affirmative steps in the process of development. City staff had already reviewed applications for potential development to assure that utilities, roadways, emergency services and flood plain management requirements could be satisfied."

[¶ 27] I again respectfully submit that the steps related to plat approval recited above bear no relationship to whether a particular property is suitable for building or whether a waiver might subsequently be granted for building within the setback area. But even assuming this provides a rational basis for not allowing waivers in unplatted land, it provides absolutely no basis for denying currently unplatted landowners the ability to apply for a waiver if their property would be platted after May of 2012.

[¶ 28] I would affirm the judgment.

[¶ 29] Daniel J. Crothers